Bissell, J.,
delivered the opinion of the court.
The issue between the taxpayer and the authorities is very sharply defined. The treasurer insists the statutes make all personal taxes a lien on realty which is superior to any other encumbrance, and to all classes of securities, whether prior in time or subsequent. In the oral argument as well as in the briefs, counsel have discussed not only the question which is necessarily involved, but also the general proposition respecting the existence or nonexistence of a lien on realty for personal taxes. It is quite possible, under some circumstances, we might feel compelled to discuss and decide it. Possibly the determination of this question would be quite as satisfactory as the settlement of the precise issue. But our conclusions respecting the particular matter presented will wholly adjudicate the case, and we do not feel quite at liberty to pursue the other line of inquiry, notwithstanding its very great public importance and the general interest manifested respecting it. Wherever courts depart from the lines which must be necessarily followed, somewhat of the binding force of the opinion is destroyed by the suggestion that the matter is in reality obiter to the -decision, even though therein might be found a very substantial basis on which to rest it. We therefore leave this- matter of the general lien for personalty taxes undetermined. Whatever appears to be a discussion of this question must be taken as limited to the one thing decided, and that is that taxes levied against the personal property of an owner subsequent to the execution of an encumbrance on land in favor of a third party are not a lien superior in right to that security.
The fundamental right of all governments to levy taxes is universally recognized. The power is broad enough to include authority to make the taxes a lien which shall override any other security or encumbrance, whether created anterior to the levy, or subsequent to the assessment. To ascertain whether it has been exercised in any given case, we must resort to the particular legislation respecting it in the juris *364 diction wherein the lien is asserted. In the absence of legislation, the state must first look to the personal property of the taxpayer for the satisfaction of its imposts, and only resort to the land when that remedy has been fully exhausted. Blackwell on Tax Titles, vol. 1, chap. 9, secs. 340, et seq.; Pettit v. Black, 8 Neb. 52; Abbott et al. v. Edgerton, 53 Ind. 196; Johnson v. Hahn, 4 Neb. 139.
In no general sense are these authorities applicable, because there is affirmative legislation on the subject. Under some conditions taxes are a lien on realty, but they have this force because of the enactments. Legislation directly charging the realty is prerequisite to its existence ; without it taxes are not thus collectible, either as against the owner or an incumbrancer. Meriwether v. Garrett, 102 U. S. 472; Heine v. The Levee Commissioners, 19 Wallace, 655; Jodon & Wife v. City of Brenham, 57 Tex. 655.
Power being conceded, and legislation directed to that end in force, we are next to determine the extent and scope of the statutes relating to the subject. Rules for the construction of statutes are of such an elastic character and so generally applied with reference to the subject-matter, and the end to be accomplished, that it is always a difficult and a delicate task to use terms which in strict precision shall exactly express what must control the courts in the exercise of their functions. The construction of revenue laws has been the subject of many judicial determinations, and has occupied the attention of learned writers. They universally agree that special consideration must he given to the purposes for which such laws are enacted. They are intended to provide the revenues which are essential to governmental existence. In construing such laws, great care must be taken not only to secure to the government what is essential and prevent the taxpayer from escaping the burden justly laid on him, but also to see that the citizen’s property is not taken unless it is subject to the tax. On this general basis, the courts have declared that revenue statutes must be strictly construed, and the words used taken according to their natural *365 and obvious import. This will give the government the amplest power to effectuate its objects and relieve the citizen from all unjust burdens. This is equitable to the government, and it is fair to the citizen. The construction is sometimes termed strict, and at other times the rule is said to require an interpretation which shall favor the public.
As put by one learned author: “When there is any ambiguity found, the construction must be in favor of the public; because it is a general rule, that where the public are to be charged with the burden, the intention of the legislature to impose that burden must be explicitly'and distinctly shown.” Potter’s Dwarris on Statutes, page 255. This is in harmony with the adjudicated cases, and the opinions of text writers. Cooley on Taxation, chap. 9; Southerland on Statutory Construction, chap. 14; Hubbard v. Brainard, 35 Conn. 563. The principle has been clearly recognized by our supreme court. Gomer v. Chaffee, 6 Colo. 314; Aggers v. The People, 20 Colo. 348.
Many of the difficulties which might otherwise attend the construction of the statutes are therefore very largely removed. The defendants in error rely chiefly on the general phraseology of section 2818 of the General Statutes quoted in the statement. Its language is comprehensive and significant, and in terms declares that all taxes shall be levied at a fixed date, and shall be a perpetual lien upon all real estate subject to taxation until the taxes and penalty are paid. The plaintiff in error contends that it was the purpose of the legislature to provide only that the taxes on any piece of realty should be a lien on it until it was paid. The county insists that the section is an evident expression of the legislative intent to make taxes of all description, whether on realty or personalty, a lien on the lands of the person against whom the taxes are assessed. We need not decide which construction is legitimate, nor whether only those taxes are a lien which are levied on a particular piece of land, nor whether, under any other circumstances, like those which would be present if the personalty against which the taxes were levied *366 had been removed from the county or the state, whereby the government was liable to lose its revenues, the tax would be a lien on realty, because no such case is presented. Furthermore, the subsequent section compels a different conclusion with reference to the priority of the encumbrance. According to section 2819, taxes levied and assessed upon personal property are a lien upon the property against which the taxes are assessed. If the taxes be not paid by a date named, the treasurer is by that and subsequent sections authorized to proceed to collect them by a distraint of the personal property on which the lien exists. The right of the treasurer to distrain extends not only to a seizure at the time the taxes are due, but he may at any time after the taxes are assessed, if he apprehends danger of loss, proceed to seize and sell the property on which the statute has given a lien. So broad is this power, and so ample for the purposes of protecting the government, that it may well be doubted whether in any case personalty taxes may be charged as a lien on land. But we do not intend to express an authoritative opinion on that subject. We simply hold that where the language is not direct, positive, and specific, it cannot be held to create alien on land for taxes which is superior to antecedent encumbrances. Such a construction would unjustly destroy the security; it would annul the most solemn contracts; it would take one man’s property to pay another man’s debt, for the citizen who takes the encumbrance antecedent to the levy acquires a vested interest in the property which can only be taken away from him by the exercise of some power which has been directly conferred by a legislative act. The subject has been exhaustively discussed in many cases, and the rule which we announce has received the approval of most courts in which the question has been considered. Macknet v. Newark, 42 N. J. Law, 38; Miller v. Anderson et al., 1 So. Dak. 539; Gormley’s Appeal, 27 Pa. St. 49; Bibbins v. Clark & Co., 90 Iowa, 230; Cooper v. Corbin, 105 Ill. 224,
Some states have statutes which directly provide that the lien for taxes shall be superior to all other charges and *367 encumbrances and securities. Wherever there is such legislation, it is always conceded to have the force and effect contended for by the defendants in error, and to give the government a lien superior to that which the citizen holds by virtue of the prior encumbrance. Such legislation would not be unconstitutional. Governmental necessities must be permitted to override individual equities, and the sovereignty must be accorded the broadest powers for the conservation of its own existence. We have been referred to no case which extends the lien beyond what is deemed to be the necessary and inevitable import of the language used by the legislature. Some decisions undoubtedly hold general language which makes all taxes a lien broad enough to give the state a lien on real estate for the taxes imposed on personalty. The authorities are not in harmony, and the courts, as notably in Iowa, have not always adhered to their first impressions. We are less embarrassed in this matter because the general phraseology of section 2818 must be held to be modified by the language of the subsequent sections, and by the evident purpose of the legislature. Counties have full authority and power to protect themselves by. the process of distraint, and by the broader authority given them in case of anticipated danger, to seize the property on which the taxes have been levied. In the absence of a direct act declaring that the taxes shall be a lien superior to all antecedent encumbrances, we do not believe these revenue laws can be held to cut out and destroy the contractual rights acquired by a third person who is under no obligation to pay the tax. This construction is fully supported by the authorities ; protects the sovereignty in the collection of its dues, and the citizen in the enjoyment of his rights.
We have been referred to a case in the 11th Colorado,— Larimer County v. The National State Bank of Boulder, 11 Colo. 564, — where the bank attempted to recover from the count}' money previously paid to redeem certain property from a tax sale. The court held the payment voluntary and the money not recoverable. At the conclusion of the opin *368 ion reference was made to section 2912 of the statutes, which authorizes the sale of land for taxes and for the taxes assessed against the owner of personal property. The statute seems to have been attacked by counsel for uncertainty and as against public policy. The court declares the contentions not to be well founded, but. does not attempt to construe the statute, declare its force, or its operative effect. Possibly the opinion lends some support to the theory contended for by the defendant in error, but if that is its necessary construction, this decision in no manner conflicts with it. We have expressly declared our intention not to decide the existence or nonexistence of a lien on realty for personal taxes, except in so far as we are compelled to decide it in order to hold, as we do, that the lien, if it does exist, is inferior to that of an antecedent encumbrance.
The ruling of the court below on demurrer is not in accord with these views, and the judgment will accordingly be reversed.

Reversed.